UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                   :

TRUSTEES OF THE NEW YORK CITY DISTRICT    :
COUNCIL OF CARPENTERS PENSION FUND,     :           20 Civ. 8983 (PAE)
WELFARE FUND, ANNUITY FUND,                 :
APPRENTICESHIP, JOURNEYMAN                :        <u>OPINION & ORDER</u>
RETRAINING, EDUCATIONAL AND INDUSTRY   :
FUND; TRUSTEES OF THE NEW YORK CITY      :
DISTRICT COUNCIL OF CARPENTERS RELIEF   :
AND CHARITY FUND; AND THE CARPENTER    :
CONTRACTOR ALLIANCE OF METROPOLITAN  :
NEW YORK,                                      :
                                   :
                    Plaintiffs,        :
                                   :
                -v-                   :
                                   :
WILLIAM SOMERVILLE, INC.,                 :
                                   :
                     Defendant.       :
                                   :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

        Plaintiffs—the Trustees of the New York City District Council of Carpenters Pension

Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational

and Industry Fund (the "ERISA Funds"); Trustees of the New York City District Council of

Carpenters Relief and Charity Fund (the "Charity Fund"), and the Carpenter Contractor Alliance

of Metropolitan New York ("CAA Metro," together, with the ERISA Funds and the Charity

Fund, "plaintiffs")—move for summary judgment against respondent William Somerville, Inc.

("Somerville").  Plaintiffs claim that Somerville violated its obligations to them under a

collective bargaining agreement ("CBA") by failing to (1) remit hourly benefit contributions to

plaintiffs for all hours worked by Somerville's employees within the trade and geographical

jurisdiction of the Union, (2) timely remit contributions, and (3) remit contributions to plaintiffs

at the correct contribution rate. The motion for summary judgment is unopposed. For the following reasons, the Court grants it.

I.      **Background**[1]

   A.      **The Parties**

The ERISA Funds are employer and employee trustees of multi-employer labor-management trust funds organized and operated in accordance with the Employee Retirement Income Security Act of 1974 ("ERISA"). SOF ¶ 1. The Trustees are fiduciaries of the ERISA Funds within the meaning of section 3(21) of ERISA, 29 U.S.C. § 1002(21). *Id.* The ERISA Funds maintain their principal place of business at 395 Hudson Street, New York, New York 10014. *Id.*

The Charity Fund are Trustees of a charitable organization established under Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3). *Id.* ¶ 2. The Charity Fund also maintains its principal place of business at 395 Hudson Street, New York, New York 10014. *Id.*

CAA Metro is a not-for-profit organization established under Section 302(c)(9) of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 186(c)(9), which maintains its principal place of business at 245 Fifth Avenue, New York, New York 10016. *Id.* ¶ 3.

Somerville is a corporation incorporated under the laws of the State of New York. *Id.* ¶ 4. At all relevant times, Somerville was an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and an employer in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142. *Id.* Somerville maintains its principal place of business at 166 E. 124th Street, New York, New York 10035. *Id.*

---

[1] The following undisputed facts are derived from plaintiffs' Rule 56.1 Statement, Dkt. 30 ("SOF").

**B.      Factual Background**

**1.      Somerville's Obligations to Plaintiffs**

At all relevant times, Somerville was bound by a CBA with the New York City District Council of Carpenters (the "Union"). *Id.* ¶ 5. The CBA required Somerville to remit hourly contributions to plaintiffs, at contribution rates it specified, for every hour of work performed within the trade and geographical jurisdiction of the Union ("Covered Work") by Somerville's employees. *Id.* ¶ 6; *see also id.* ¶¶ 1-3. The CBA also bound Somerville to plaintiffs' policies for the collection of employer contributions (the "Collection Policies"). *Id.* ¶ 7. Pursuant to the CBA and the Collection Policies, Somerville was required to furnish its books and payroll records to plaintiffs when requested for the purpose of conducting an audit. *Id.* ¶ 8. The CBA and Collection Policies permitted plaintiffs to audit Somerville's books to ensure its compliance with its benefit contribution obligation to plaintiffs under the CBA and Collection Policies. *Id.*

The CBA and the Collection Policies mandated that, in the event that Somerville was delinquent in remitting contributions to plaintiffs, such that formal proceedings were required to collect the contributions, Somerville was to pay plaintiffs the principal amount of delinquent contributions; interest on the unpaid contributions determined at the prime rate of Citibank plus two percent (2%); the greater of interest calculated as set forth previous or liquidated damages equal to twenty percent (20%) of the amount of the unpaid contributions; plaintiffs' audit costs incurred in determining the delinquency; plaintiffs' reasonable attorneys' fees and costs of the action; and such other legal or equitable relief as a court found appropriate. *Id.* ¶¶ 9–10.

The Collection Policies also required that Somerville pay its contributions within seven days of the date on which Somerville's contributions became due and owing. *Id.* ¶ 11. If Somerville failed to pay its contributions within seven days of the due date, then, under the

Collection Policies, late payment interest ("LPI") was to be assessed on Somerville's delinquent contributions at the prime lending rate of Citibank plus 200 basis points, compounded daily. *Id.*

### 2. Somerville Fails to Meet Its Obligations

It is undisputed that Somerville breached its obligations to plaintiffs, by failing to (1) remit hourly benefit contributions to plaintiffs for all hours of Covered Work, (2) timely remit contributions, and (3) pay the correct contribution rate.

> a. *Somerville Failed to Remit Contributions to Plaintiffs for All Covered Work*

Pursuant to the CBA and Collection Policies, plaintiffs conducted an audit of Somerville covering the period December 25, 2017 through December 29, 2019, (the "2017-19 Audit"). *Id.* ¶ 12. Plaintiffs' auditor reviewed Somerville's payroll records to determine the number of hours of Covered Work performed by each employee of Somerville for the period of December 25, 2017 through December 29, 2019. *Id.* ¶ 13. The auditor then compared the number of hours of Covered Work that the auditor identified in Somerville's payroll records against the number of hours of Covered Work reported by Somerville to plaintiffs. *Id.* Where Somerville's payroll records reflected more hours of Covered Work than that reported by Somerville to plaintiffs, the auditor multiplied the hours that were not reported but were in Somerville's payroll records by the applicable hourly benefit contribution rate identified in the CBA to determine the amount of contributions owed by Somerville. *Id.* ¶¶ 13–14. Once the auditor identified the principal amount of delinquent contributions, the auditor calculated interest thereon, liquidated damages, and audit costs in accordance with the formulas set forth in the CBA. *Id.*

Based on that analysis, plaintiffs' auditor created an audit report for the period of December 25, 2017 through December 29, 2019. *Id.* The report identified a total delinquency owed by Somerville to plaintiffs of $34,159.01, representing delinquent benefit contributions of

$25,761.86, interest thereon of $485.03, liquidated damages of $5,152.37, and audit costs of $2,759.75, plus Plaintiffs' attorneys' fees and costs. *Id.*

Plaintiffs also conducted, pursuant to the CBA and the Collections Policies, an audit of Somerville's books and records for the period of December 30, 2019 through March 31, 2020, (the "2020 Audit," together with the 2017-19 Audit, hereinafter referred to as the "Audits"). The auditor employed the same method of analyzing Somerville's books and records in the 2020 Audit as used in the 2017-19 Audit. *Id.* ¶¶ 15–16.

Based on the auditor's analysis and comparison of the hours that Somerville worked during December 30, 2019 through March 31, 2020 and the contributions that it paid to plaintiffs during that period, Somerville owes a total delinquency to plaintiffs, for that period, of $39,151.19, representing delinquent benefit contributions of $29,006.45, interest thereon of $1,583.70, liquidated damages of $5,801.29, and audit costs of $2,759.75, plus plaintiffs' attorneys' fees and costs. *Id.*

     *b.*  *Somerville Failed to Pay Contributions in a Timely Manner*

Plaintiffs monitor the deadline for each of Somerville's contributions and the corresponding date of payment. *Id.* ¶¶ 18–20. Under the Collection Policies, Somerville must pay its contributions within seven days of the due date. *Id.* ¶ 11. Failure to do so makes Somerville liable for LPI, which accrues on its delinquent contributions at the prime lending rate of Citibank plus 200 basis points, compounded daily. *Id.*

Plaintiffs tracked Somerville's untimely payments and calculated the corresponding LPI as $2,115.26. *Id.* ¶¶ 18–20.

> c.   *Somerville Remitted Contributions to Plaintiffs at the Incorrect Rate*

In July 2019, Somerville's required hourly contribution rates increased under the CBA. *Id.* ¶ 21.  Somerville failed to pay its employees this increased contribution rate under the CBA from July 7, 2019 through September 7, 2019 by remitting a lower contribution rate than that required by the CBA. *Id.* ¶¶ 21–23.  Accordingly, the rate differential between the correct contribution rate and the lower contribution rate paid by Somerville from July 7, 2019 through September 7, 2019 is $1,557.73. *Id.*

**C.   Procedural Background**

On October 27, 2020, plaintiffs filed the complaint.  Dkt. 1.  On December 16, 2020, Somerville answered.  Dkt. 10.  On September 24, 2021, following the close of discovery, plaintiffs filed a motion for summary judgment, along with a memorandum of law ("Memo"), an affidavit, declarations with attached exhibits in support, and a Rule 56.1 Statement.  Dkts. 26–30. On October 9, 2021, Somerville filed a letter stating it took no position on plaintiffs' summary judgment motion.  Dkt. 32.

**II.   Discussion**

**A.   Legal Standards**

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In making this determination, the court must view all facts "in the light most favorable" to the non-moving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (citations omitted).  In determining whether there are genuine issues of material fact, the court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236

6

(2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

"Even when a motion for summary judgment is unopposed, the district court is not

relieved of its duty to decide whether the movant is entitled to judgment as a matter of law."

*Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004); *see also Amaker v.*

*Foley*, 274 F.3d 677, 681 (2d Cir. 2001).  In reviewing an unopposed motion for summary

judgment, a court:

> may not grant the motion without first examining the moving party's submission to
> determine if it has met its burden of demonstrating that no material issue of fact
> remains for trial.  If the evidence submitted in support of the summary judgment
> motion does not meet the movant's burden of production, then summary judgment
> must be denied *even if no opposing evidentiary matter is presented.*

*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (emphasis in original) (quoting

*Vt. Teddy Bear Co.*, 373 F.3d at 244).

## B.    Application

Based on its review of the plaintiffs' motion and the accompanying record, the Court

finds summary judgment warranted, as plaintiffs have shown there is no material issue of fact in

dispute.  Plaintiffs have adduced sufficient evidence to demonstrate that Somerville breached its

obligations to plaintiffs by failing to (1) remit hourly benefit contributions to plaintiffs for all

hours of Covered Work, (2) timely remit contributions, and (3) pay the correct contribution rate.

Consistent with this, at the September 10, 2021 case management conference, the parties

represented to the Court that there was no dispute as to liability or damages.

Accordingly, the Court grants plaintiffs' claims for damages in the sums requested, for a

total amount of $76,983.19.

## C.    Attorneys' Fees Associated with this Action

Plaintiffs also seek attorneys' fees in the amount of $22,583.50 and costs in the amount

of $474.21, both incurred in the course of bringing this action.  Decl. of John M. Harras, Esq.

("Harras Decl.") ¶¶ 15–16.  They are entitled to reasonable attorneys' fees and costs pursuant to

the CBA, and pursuant to 29 U.S.C. § 1132(g).  *See* CBA, art. X, § 11(c).

Here, Somerville, in violation of the CBA, failed meet its obligations to plaintiffs.  It also

failed to respond to plaintiffs' motion for summary judgment.  The Court therefore finds it

appropriate to award plaintiffs reasonable attorneys' fees and costs incurred in pursuing this

action.  *See, e.g., Trustees of New York City Dist. Council of Carpenters Pension Fund v. Richie*

*Jordan Constr. Inc.*, No. 15 Civ. 3811 (PAE), 2015 WL 7288654, at *4 (S.D.N.Y. Nov. 17,

2015).

In establishing the reasonableness of a fee application, the party seeking attorneys' fees

"bears the burden of . . . documenting the appropriate hours expended and hourly rates."

*Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  The starting point for calculating a

"presumptively reasonable fee" is "the lodestar—the product of a reasonable hourly rate and the

reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d

154, 166 (2d Cir. 2011); *see generally Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010).

"The presumptively reasonable fee boils down to 'what a reasonable, paying client would be

willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the

case effectively.'" *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quoting

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 493 F.3d 110, 112, 118

(2d Cir. 2007), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008)).  Courts are obliged

to exclude hours that are "excessive, redundant, or otherwise unnecessary." *Kirsch v. Fleet St.,*

*Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quoting *Hensley*, 461 U.S. at 434).  The reasonableness

of hourly rates is guided by the market rate "[p]revailing in the community for similar services

by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465

U.S. 886, 895 n.11 (1984).  The relevant community is this District.  *Arbor Hill Concerned Citizens*, 522 F.3d at 190–91.

Here, plaintiffs seek attorneys' fees of $22,583.50, reflecting 73.9 hours of work.  *See* Harris Decl. ¶ 15.  To support their request for such fees, plaintiffs' counsel submitted billing records that detailed the tasks performed and the hours worked.  *See id.* Exs. A–B ("Invoice").  This Invoice also provides the hourly rates of the relevant individuals.  Four attorneys and two paralegals worked on this case:

- John M. Harras ("Harras"), a partner at Virginia & Ambinder, LLP ("V&A"), and a 2015 law school graduate, whose primary practice is ERISA collection actions. He billed his time at a rate of $350 per hour for his work in connection with this matter.

- Nicole Marimon ("Marimon"), a partner at V&A, and a 2014 law school graduate, whose primary practice is ERISA litigation.  She billed her time at a rate of $350 per hour for her work in connection with this matter.

- Marc A. Tenenbaum ("Tennenbaum"), a partner at V&A, and a 1989 law school graduate, whose primary practice is ERISA litigation.  He billed his time at a rate of $350 per hour for his work in connection with this matter.

- Marlie Blaise ("Blaise"), an associate at V&A, and 2018 law school graduate, whose primary practice area is ERISA litigation.  She billed her time at a rate of $275 per hour for her work in connection with this matter.

- Finally, V&A billed the paralegals' time at a rate of $120 per hour for work performed in connection with this action.

Plaintiffs represent that these rates "were negotiated with the Boards of Trustees of the Funds consisting of members with significant business and negotiation experience and, as such, should be viewed as rates that a reasonable client would pay." Memo at 13. For the following reasons, however, the Court is constrained to conclude that the proposed rates are not reasonable in light of the rates prevailing in this District.

As to Ms. Blaise, the Court cannot approve the proposed rate of $275 per hour. Courts in this district have found rates of $125-$300 per hour reasonable for associates, depending on, *inter alia*, their experience. *Richie Jordan Constr. Inc.*, 2015 WL 7288654 at *4. This Court has approved a rate of $225 for an associate at V&A with similar experience to Ms. Blaise. *See Trs. of N.Y. Dist. Council of Carpenters Pension Fund v. DV I, LLC*, No. 17 Civ. 7367 (PAE), 2018 WL 461244, at *5 (S.D.N.Y. Jan. 18, 2018); *see also Trustees of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund v. Metroplex Serv. Grp., Inc.*, No. 18 Civ. 5889 (PAE), 2018 WL 4141034, at *5 (S.D.N.Y. Aug. 30, 2018). The Court's view is that $225 represents the upper bound of prevailing rates in this District for associates similarly situated to Ms. Blaise, with 2-3 years of experience. *See, e.g.*, *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Stop & Work Constr. Co.*, No. 17 Civ. 5693 (JGK), 2018 WL 324267, at *3 (S.D.N.Y. Jan. 5, 2018); *Trs. of N.Y. Dist. Council of Carpenters Pension Fund v. Metro. Fine Mill Work Corp.*, No. 14 Civ. 2509 (PAE), 2015 WL 2234466, at *5 (S.D.N.Y. May 12, 2015). Accordingly, the Court adjusts Ms. Blaise's rate to $225 per hour.

As to Ms. Marimon, courts in this District have repeatedly denied her requested rate of $350 per hour. *See Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman Retraining, Educ. and Indus. Fund v. Galt Installations, LLC*, No. 20 Civ. 2582 (JGK), 2020 WL 6274774, at *3 (S.D.N.Y. Oct. 26, 2020)

(finding that $350 per hour was "above the range of fees ordinarily awarded . . . for similar services in other cases"); *Trustees of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Shorecon-NY, Inc.*, No. 17 Civ. 5210 (RA), 2020 WL 3962127, at *5 (S.D.N.Y. July 13, 2020); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund et al. v. Triangle Enter. NYC, Inc.*, No. 20-CV-793 (RA), 2020 WL 2306484, at *5 (S.D.N.Y. May 8, 2020). Courts in this circuit have generally held that $300 per hour is a reasonable rate for partners engaging in the work done here. *See Shorecon-NY, Inc.*, 2020 WL 3962127 at *5 (collecting cases). Accordingly, Ms. Marimon's rate is adjusted to $300 per hour for her work performed in this case.

For similar reasons, the Court cannot approve Mr. Tennenbaum's or Mr. Harras's proposed rates of $350 per hour. Accordingly, Mr. Tennenbaum's rate is adjusted to $300 per hour. However, this Court awards in fees a $325 rate for Mr. Harras's work in recognition of his apparent lead role in prosecuting this action. *See Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. JB Squared Constr. Corp.*, No. 20 Civ. 2659 (KPF), 2020 WL 6825693, at *6 (S.D.N.Y. Nov. 19, 2020).

The Court finds the requested rate of $120 per hour for the work performed by V&A's legal assistants to be reasonable. *See JB Squared Constr. Corp.*, 2020 WL 6825693, at *7 (S.D.N.Y. Nov. 19, 2020) (collecting cases so holding).

"As for the number of hours expended, courts uphold fee requests in ERISA cases when they determine that such fees are 'reasonable.'" *Finkel v. Jones Lang LaSalle Am., Inc.*, No. 08 Civ. 2333 (RRM) (RML), 2009 WL 5172869, at *5 (E.D.N.Y. Dec. 30, 2009); *see also McDonald v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006).

The Court has reviewed the Invoice provided by petitioners' counsel, and it reflects sound billing practices: It is thorough, detailed, relevant, and easy to understand, with no evident duplication of effort. Accordingly, the Court finds the hours that counsel expended reasonable.

The Court therefore grants petitioners' counsel attorneys' fees in the amount of $20,410.00, reflecting the rates approved above.

Plaintiffs also seek to recover $474.21 in costs. Courts in this Circuit will generally grant "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (quoting *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989)). The Court finds the minimal costs associated with this action to be in line with costs awarded in comparable proceedings. *See, e.g., Stop & Work Constr.*, 2018 WL 324267, at *3. The Court therefore finds them reasonable and awards plaintiffs costs in the amount of $474.21. Accordingly, the Court awards fees and costs totaling $20,884.21.

### D.      Post-Judgment Interest

Plaintiffs also seek post-judgment interest. Memo at 14. Such interest "shall be allowed on any money judgment in a civil case recovered in a district court . . . at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). Awards of post-judgment interest under § 1961 are mandatory. *See Cappiello v. ICD Publ'ns, Inc.*, 720 F.3d 109, 113 (2d Cir. 2013) (collecting cases). The Court therefore also awards interest to accrue from the date judgment is entered until payment is made.

## CONCLUSION

For the reasons stated above, the Court grants summary judgment in favor of plaintiffs and issues judgment in the amount of $76,983.19, plus post-judgment interest pursuant to 28 U.S.C. § 1961(a). The Court also awards attorneys' fees and costs in the amount of $20,884.21. The Court respectfully requests that the Clerk of Court close this case.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: December 21, 2021
     New York, New York